State of Rhode Island vs. James Imondi et als. } Indictment No. 16649.

April 3, 1934.

O'CONNELL, J. This case comes before the Court on the motions for a new trial filed on behalf of the defendants, James Imondi, James Palmieri, Carmine Volanti and Frank P. Antonucci. The indictment charges one Theodore Jackvony and all the defendants named above with conspiracy to extort money from one Max Siegel. The jury found all defendants guilty as charged in the indictment. The defendant Theodore Jackvony later appeared, withdrew his motion for a new trial and was sentenced to two years in State Prison.

The evidence showed that the said Max Siegel, after receiving several threatening letters, took the matter up with the police and following their instructions inserted, as directed by the writer of the letters, advertisements in the Boston Post and the Providence Evening Bulletin. On June 16, 1932, he received a telephone call instructing him to be at the entrance of St. Francis Cemetery at 11:30 that night and at about 7:40 P. M. received another telephone call reminding him of this appointment.

A package of money was made up, some of the bills being marked, and because of his resemblance to Siegel, in build and stature, Inspector Edward McCarroll was detailed to keep the appointment, wearing Siegel's hat and taking his umbrella. He proceeded to the entrance gate of St. Francis Cemetery in a Yellow Cab and after waiting about 35 to 40 minutes, car P 509, driven by the defendant Antonucci, came up and when he hesitated or refused to get in, Antonucci said, "for Christ's sake, what are you afraid of, get into the car."

In the meantime, while McCarroll was waiting at the cemetery gate, inspectors of the Providence and Pawtucket police departments had been stationed behind the cemetery gate and walls and others stationed in parked cars on Smithfield Avenue, nearby.

Several inspectors testified that P 509, the car driven by Antonucci, and car 68824, occupied by the other defendants, passed them twice before Antonucci's car stopped at the cemetery gate, where Inspector McCarroll was waiting. Inspector Leo T. Burns of the Providence police department testified that the second time he saw the cars, they both came into Smithfield Avenue, from Power Road, and that they were the only cars he saw come from Power Road.

When Antonucci stopped at the gate, Inspector McCarroll drew his gun, the men from behind the gate and walls surrounded the car and Antonucci told them his story. He claimed that he was to go to the first street beyond the school, go to the end of the street, stop at a sand bank, drop Siegel, receive $10 from him, take him back to the cemetery and his job was done. He claimed that he had been previously called at the taxicab office where he worked and asked if he wanted to make some money and upon replying in the affirmative he was told to meet a man named Brown at the cemetery gate and to follow out the instructions just referred to.

For some reason, evidently a mistake on the part of the officers, who were perhaps not familiar with the territory, or who passed the first street beyond the school, thinking that the school was a hospital, Antonucci's car, with Inspector McCarroll and other police, went some distance beyond and turned into Morris Avenue. At the end of the street Antonucci stopped, blew his horn several times waking up some of the neighbors. The mistake being discovered by some of the Pawtucket inspectors, Antonucci was ordered to turn around and go back to Grotto Avenue, which was the first street on the right on Smithfield Avenue, beyond the school.

Going down Grotto Avenue as far as they dared go with a car, they turned off the road, near an old soap factory, then idle and abandoned. The officers searched the buildings and the immediate vicinity but found nothing.

As they waited in the darkness with lights switched off the cars, both Antonucci's car and one or more police cars being there at the time, the lights of an automobile appeared over the crest of the hill, coming toward them. After this car passed Ruel Street and had reached a point 200 to 300 feet beyond, Antonucci, according to three or four of the officers, flickered the lights of his car two or three times and then turned them off. The oncoming machine, then 600 to 700 feet away, stopped, backed up the hill and turned off into Ruel Street, which it had previously passed. Grotto Avenue from Ruel Street down to the old soap works was a particularly dark and lonely stretch and passable by automobile only for a few feet beyond the soap works. It is hard to imagine anyone having any legitimate business on that piece of road at that hour of night.

Antonucci was then ordered by the police to overtake the other car and caught up to it on Ruel Street. This was about 12:25 A. M. All the defendants were taken to the Pawtucket Police Station, questioned, finger-printed and their pictures taken.

Although the defendant Antonucci claimed that he did not know any of the other defendants except Palmieri, at least two police officers testified that at the Pawtucket Police Station the defendant Jackvony, looking in the general direction of Antonucci, said, "they'll give you a few crackers and you'll give them your guts" or "throw up your guts", or words of similar import, which would indicate that there was some connection between Antonucci and the other defendants.

While the evidence as to conspiracy was in its nature, as frequently happens in this class of cases, circumstantial, yet the combination of circumstances was so strong that it indicated clearly a plan or concert of action, between the several defendants.

While the defendants denied the existence of any such conspiracy, the Court is of the opinion that if the jury believed the essential facts presented in testimony by the State, that the guilt of all the defendants would be established beyond a reasonable doubt. The jury was fully instructed upon the law applicable to a case of this nature and having found the defendants guilty, the Court sees no valid reason to disturb the verdict.

The motions for a new trial filed on behalf of James Imondi, James Palmieri, Carmine Volanti and Frank P. Antonucci, are therefore hereby denied and dismissed, as to each of said defendants.

For State: Attorney General.

For defendants: Robert P. Beagan, Benjamin Cianciarulo, Thomas F. Vance, Hogan & Hogan.